

**REED COLLEGE**

VICE PRESIDENT FOR STUDENT SERVICES
TITLE IX COORDINATOR

3203 SE Woodstock Boulevard, Portland, Oregon 97202-8199
*phone: 503/517-7521  fax: 503/777-7225*

April 16, 2018

▇▇▇▇▇
Reed College

Dear ▇▇▇,

I write in response to your March 5, 2018 appeal of the investigative findings in the Title IX allegation documented in ARMS report 170637. It is in my role as Reed College's Title IX Coordinator that I have received and rendered a decision regarding this appeal, in accordance with Reed's stated procedures for appeals of investigative findings.

> "If either party has access to new information that they believe would have a material impact on the outcome of the completed Title IX investigation, they may appeal by notifying the Title IX Coordinator in writing within ten (10) working days of receiving this notice. The Title IX Coordinator will consider the new information, engage additional investigative steps as appropriate, and inform the students as soon as practicable of any change(s) in the outcome, which shall stand as the final outcome of the Title IX investigation. Should either student wish to pursue the matter further, they may choose to do so through the college's established judicial process."

I will take this opportunity to acknowledge that it has taken longer than I would have hoped to complete this process. I am aware and regret that waiting for this decision may have caused you and the reporting party, ▇▇▇▇▇ (who uses They pronouns and who will also receive a copy of this letter) significant stress, and I have endeavored to complete this process as efficiently as possible. I have carefully considered all the available and relevant facts, and it has taken time to review the voluminous record in this case, both in terms of the investigative file itself as well as your appeal. It is this detailed review of the relevant and recorded facts, as well as our face-to-face meeting on April 10, 2018, that serve as the basis of my decision to reject your appeal.

I hereby confirm the finding of the investigation and render the following decision, which is final: the evidence available to me at the time of this writing indicates that you are responsible for initiating sexual contact without consent in the incident in question. Specifically, the available evidence indicates that ▇▇ was incapable of giving consent due to intoxication, and that you knew or should have known this based on your interactions with and descriptions from others of ▇▇ on the night in question. The evidentiary standard used in this case, as in all Title IX cases at Reed during the period in question, is preponderance of the evidence, or "more likely than not."

While the decision documented in this letter cannot be appealed, both you and ▇▇ have been informed that you have the right to refer this case to Reed's Title IX Board, to report to law enforcement and/or to pursue other legal action; you both retain this right.

It should also be noted that you made a separate report against ▇▇; that matter (ARMS 170709) has been independently investigated and is not a part of this appeal or this decision.

I have attempted to explain below the rationale for this decision, and I will make myself available to both you and ▇▇ should you have any questions.

**Rationale**
In Their August 10, 2017 report, ▇▇ alleged multiple instances of non-consensual sexual contact. The investigative findings, summarized in the aforementioned ARMS report, indicated that there was insufficient evidence to support the claims, with the exception of an incident reported to have occurred April 22-23, 2016. In regards to this incident, the investigation revealed evidence that supported the report that sexual contact occurred without consent, due to incapacitation, as well as evidence that supported a denial of the report. The investigator determined that the preponderance

of evidence supported a finding that you were responsible for non-consensual sexual contact sometime during the night of April 22 or the early morning of April 23, 2016.

The evidence supports the assertion that during the evening of April 22, 2016 ▮ was very intoxicated. Multiple witnesses reported that ▮ was seen with an empty or nearly empty bottle of wine and also a wine glass during the early evening of April 22, that They reported to others that They were "drunk," that They appeared disoriented and visibly intoxicated and in need of help. You also were reported to have described ▮ as "too fucked up." You both agree that ▮ contacted you to request assistance returning to Their residence hall. You confirm that you obtained a vehicle and eventually returned with ▮ to Their residence hall. In your exchange with a witness the next day, per that witness' report you "insisted that (he) and ▮ had had conversations about consent in the past and because they were in a relationship it was fine." You also were not reported to have said at that time that ▮ was capable of giving consent when you had sex.

You both reported memory issues in describing the events of that night. You attributed these memory issues to the lapse of time between the event and the investigation, and ▮ points to the influence of alcohol and past trauma.

In the course of the investigation, you provided the results of two polygraph examinations and a psychological evaluation. That evidence was considered, but properly found not to be probative. Even assuming that Reed would accept polygraph evidence, an issue which is undetermined, the questions were not sufficiently specific to pinpoint the date in question, used language that was not consistent with the relevant Reed policy (the Discriminatory Harassment and Sexual Misconduct, or DHSM policy), and included ambiguities. The psychological evaluation was reviewed and properly determined not to be relevant to the issues in question. On appeal I adhere to those conclusions.

It is not in dispute that you and ▮ were together in ▮'s room from 8:50 PM on April 22 until approximately 9:00 AM on April 23, a period of more than twelve hours. There is no evidence that ▮ consumed alcohol while in Their room. That you and ▮ had sex during that period is not in dispute. However, neither you nor ▮ could identify precisely when sexual contact occurred during the twelve hours you were together that night and the next morning. ▮ reports having been too impaired by alcohol to have given consent, and that They awoke on April 23 with the knowledge that They had had sex, and only spotty memories of the incident. You report having waited until ▮ had sobered up sufficiently to give consent, and that ▮ did in fact give explicit consent. No witnesses were known to be present during the twelve-hour period in question. It is possible to estimate ▮'s blood alcohol content (BAC) from the time They stopped drinking, but the data available is insufficient to make conclusive statements about ▮'s BAC. Neither you nor ▮ has been able to identify the alcohol content of the wine ▮ is reported to have drunk, when exactly ▮ began drinking, or precisely how much alcohol was consumed before ▮ eventually returned to Their room. It is also unclear whether, or to what extent and when ▮ vomited.

Your appeal is based in part on the consideration of an extrapolation of likely BAC. I will note that this is a private proceeding and such an extrapolation is not precluded. However, I agree that the lack of reliable BAC-related data means that the issue of BAC is ambiguous, and I have disregarded the specific BAC-related elements of the investigative finding. Instead, the presence or absence of consent (as a function of capacity) must be determined based on other evidence pertaining to timeline and credibility.

You provided a substantially inaccurate and highly suspect timeline during the investigation, and during our subsequent conversation on April 10, 2018. You initially indicated to Gary Granger that "several hours" had passed before you returned to the residence hall), estimating that it was around midnight when you returned, and reportedly later told a witness that 6-8 hours had elapsed, during which time you and ▮ had been walking around and interacting with others. You told me that you walked around campus, ended up on the path to the south of the Performing Arts Building, talked "at length" about your relationship in an exchange that was vivid in your memory because ▮ professed Their love for you and told you that you were Their "soulmate." You also estimated that you were at Burgerville "around 8:15 PM" which would mean that the walk, the conversation, getting the keys for a car, and driving to Burgerville all transpired in 45 minutes. According to this timeline, which you described in our meeting, you got food, ▮ ate, you "drove around for a while," and according to security system data, you and ▮ entered Their residence hall at 8:50 PM, less than 90 minutes from the time you indicate having picked ▮ up from Hum play. In our conversation you also indicated for the first time that you and ▮ watched a show on ▮'s laptop that night, though you could not remember what show or other details. This information did not appear in any of your earlier testimony.

You provided various descriptions of ▮'s level of intoxication, acknowledging that They were intoxicated or impaired, and also stating that you did not know to what degree They were intoxicated. You said with apparent certainty that the level of intoxication had dissipated by the time you and ▮ had sex, yet without being able to provide an explanation or description

of how you knew this was so. You were equivocal on the subject of the vehicle you borrowed. You provided inconsistent information about where the two of you had breakfast the next morning, and argued that you could not be expected to remember details from so long ago while at the same time providing many other details which you asked us to accept without question, including the specific content of a meal you claim ▇ ate that night. You reported to me when we met that ▇ was not slurring Their words, stumbling or exhibiting any other outward signs of intoxication when you picked Them up at Hum play, and that Their text to you was without spelling or punctuation errors, indicating per your report that Their level of intoxication was apparently relatively moderate. However, testimony from multiple witnesses indicates that ▇ was severely intoxicated. In addition, you said in our meeting that ▇ rarely exhibited outward signs of intoxication, even when you knew They were seriously intoxicated.

These same considerations do not cause us to consider ▇'s credibility about the relevant events at issue to be suspect, as ▇ and eyewitnesses were consistent in reporting their concerns about the extent to which ▇ was affected by alcohol consumption that night.

When we spoke, you provided more information about the timing of initiating sex. In response to my question regarding how much time you estimated to have elapsed between the time you returned to the dorm room and the time you initiated sex, you said, "Not immediately. We engaged in a period of relaxing. It was more than an hour, at least." When I asked if it was as many as three or four hours, you said no. By this information, you place the sexual encounter as occurring before midnight, no more than a few hours after ▇ was described by multiple witnesses, and on several occasions by you yourself, as having been so intoxicated that they needed help.

Per your report, which has wavered throughout this investigation, knowing that They had been significantly intoxicated that same night, you either made a conscious guess that ▇ had sobered up sufficiently to consent to sex, and/or relied upon a belief that prior conversations provided such consent because of your pre-existing relationship. ▇'s report that They were not sufficiently recovered from the effects of Their drinking to be able to consent to sex, is supported by the preponderance of available evidence.

## Conclusion

I hereby confirm the investigative finding that it is more likely than not that the behavior described in ▇'s report occurred. I do not in the context of this decision intend to impose any sanctions. I will remind you that the No Contact Order (NCO) remains in place, and admonish you both to do everything you reasonably can to minimize unnecessary intentional contact with each other unless and until you both voluntarily agree to lift the NCO, either permanently or temporarily.

▇, I will take this opportunity to say that I am deeply concerned that regardless of intent, your behavior has caused significant harm. I sincerely hope you will carefully and thoughtfully consider your conduct and decision-making in the course of the incident in question. Reed College will do everything in its power to prevent conduct that violates our policies and/or the Honor Principle, and to respond to such behavior in ways that support those who are harmed and hold accountable those found responsible.

I strongly encourage you to make a concerted effort to adhere to college policies and the Honor Principle during your time at Reed, and to be mindful of the impact that your behavior has on other members of the Reed community.

Finally, I will remind you both that you are prohibited from engaging in any form of retaliation. The College's Title IX website and the Discriminatory Harassment and Sexual Misconduct policy provide information about prohibited actions related to retaliation. If you experience or become aware of any retaliation, please notify me or Community Safety immediately.

Sincerely,

*[signature]*

Mike Brody
Vice President for Student Services and Title IX Coordinator

cc: ▇